```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -  X
                                   :
UNITED STATES OF AMERICA           :   SUPERSEDING INDICTMENT
                                   :
          - v. -                   :   S1 19 Cr. 547 (CS)
                                   :
MEHDI MOSLEM,                      :
     a/k/a "Mike Moslem," and      :
SAAED MOSLEM,                      :
                                   :
          Defendants.              :
                                   :
- - - - - - - - - - - - - - - - -  X
```

## COUNT ONE
### (Conspiracy to Defraud the IRS)

The Grand Jury charges:

**BACKGROUND**

1.   From at least in or about 2009 and continuing through at least in or about 2018, MEHDI MOSLEM and SAAED MOSLEM, the defendants, operated a scheme intended to conceal their substantial profits from a used car dealership business and underreport their personal incomes to the Internal Revenue Service ("IRS") by substantial amounts.

### Relevant Persons and Entities

2.   At all times relevant to this Indictment:

   a.   MEHDI MOSLEM, the defendant, was a resident of Orange County, New York.

   b.   SAAED MOSLEM, the defendant, was a resident of Orange County, New York.

c. Exclusive Motor Sports, LLC ("Exclusive") was a used car dealership located in Central Valley, New York that was owned, in various degrees at different times, by MEHDI MOSLEM, SAAED MOSLEM and another individual ("Individual-1"), with whom MEHDI MOSLEM filed joint U.S. Individual Tax Return Forms 1040.

### 2009 Tax Year

3. In or about early 2010, SAAED MOSLEM, the defendant, retained a tax return preparer located in Rockland County, New York ("CC-1") to prepare his Form 1040 for 2009. SAAED MOSLEM and CC-1 agreed to decrease the amount of tax due and owing on income from Exclusive by, among other things, lowering the year-end inventory amount for Exclusive reflected in Schedule C to SAAED MOSLEM's 2009 Form 1040, which increased Exclusive's cost of goods sold and thereby decreased Exclusive's net profit.

4. In or about April 2010, SAAED MOSLEM, the defendant, caused a 2009 Form 1040 reflecting approximately $16,542 of net profit relating to Exclusive to be filed with the IRS, when the actual net profit relating to Exclusive for that year was substantially higher. SAAED MOSLEM'S 2009 Form 1040 thereby underreported the amount of tax due and owing for 2009 by a substantial amount.

### 2010-2016 Tax Years

5. From at least in or about 2010 through in or about 2018, MEHDI MOSLEM and SAAED MOSLEM, the defendants, provided

2

false information relating to Exclusive's books and records to CC-1 and approved CC-1's use false information in preparing U.S. Partnership Income Tax Return Forms 1065 for Exclusive. For example, the Forms 1065 for Exclusive for at least some of the 2010 through 2016 tax years, inclusive, falsely understated Exclusive's year-end inventory, falsely understated Exclusive's gross receipts, and falsely overstated Exclusive's business deductions. These false statements were intended to falsely understate Exclusive's income attributable to MEHDI MOSLEM and SAAED MOSLEM by a substantial amount.

6. MEHDI MOSLEM and SAAED MOSLEM, the defendants, caused the 2010, 2011, 2013, 2014, 2015, and 2016 Forms 1065 for Exclusive to be filed with the IRS. CC-1 prepared, but did not file with the IRS, the 2012 Form 1065 for Exclusive. CC-1 prepared Forms 1040 for MEHDI MOSLEM and SAAED MOSLEM based, in part, on information derived from the Forms 1065 CC-1 prepared for Exclusive for the years 2010 through 2016 inclusive.

7. MEHDI MOSLEM and SAAED MOSLEM, the defendants, caused CC-1 to file Forms 1040 for both of them for the years 2010 through 2016 inclusive while intending that certain of those Forms 1040 would i) substantially underreport income relating to Exclusive that passed through Exclusive's Forms 1065 to them, as owners of Exclusive, and ii) substantially underreport other sources of income, including, among other things, rental

property income and employment compensation paid to them by Exclusive, whether in the form of direct payments or the payment of personal expenses on their behalf. The defendants intended to fraudulently lower the reported amounts of taxes they owed by substantial amounts.

### STATUTORY ALLEGATION

8. Beginning in or about 2009, and continuing through in or about 2018, in the Southern District of New York and elsewhere, MEHDI MOSLEM and SAAED MOSLEM, the defendants, together with CC-1 and others, did knowingly conspire and agree with each other to defraud the United States of America and the IRS, an agency of the United States.

9. It was a part and an object of the conspiracy that MEHDI MOSLEM and SAAED MOSLEM, the defendants, and others, would and did knowingly defraud the United States of America and the IRS for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the IRS in the ascertainment, computation, assessment, and collection of revenue, to wit, federal income taxes.

### OVERT ACTS

10. The following overt acts, among others, were committed and caused to be committed in the Southern District of New York by MEHDI MOSLEM and SAAED MOSLEM, the defendants, in furtherance of the conspiracy and to effect its illegal object thereof:

a. In or about April 2010, SAAED MOSLEM directed CC-1 to prepare and file a false 2009 Form 1040 for SAAED MOSLEM.

b. In or about April 2011, the defendants directed CC-1 to prepare and file a false 2010 Form 1065 for Exclusive, a false 2010 Form 1040 for MEHDI MOSLEM and a false 2010 Form 1040 for SAAED MOSLEM.

c. In or about September 2012, the defendants directed CC-1 to prepare and file a false 2011 Form 1065 for Exclusive.

d. In or about October 2012, the defendants directed CC-1 to prepare and file a false 2011 Form 1040 for MEHDI MOSLEM and a false 2011 Form 1040 for SAAED MOSLEM.

e. In or about October 2013, the defendants directed CC-1 to prepare a false 2012 Form 1065 for Exclusive and to prepare and file a false 2012 Form 1040 for MEHDI MOSLEM and a false 2012 Form 1040 for SAAED MOSLEM.

f. In or about April 2015, the defendants directed CC-1 to prepare a false 2013 Form 1065 for Exclusive and to prepare and file a false 2013 Form 1040 for SAAED MOSLEM.

g. In or about August 2015, the defendants directed CC-1 to prepare and file a false 2013 Form 1040 for MEHDI MOSLEM.

h. In or about May 2015, SAAED MOSLEM directed CC-1 to prepare and file a false 2014 Form 1040 for SAAED MOSLEM.

     i. In or about February 2016, the defendants directed CC-1 to prepare and file a false 2014 Form 1065 for Exclusive and a false 2014 Form 1040 for MEHDI MOSLEM.

     j. In or about November 2016, the defendants directed CC-1 to prepare and file a false 2015 Form 1065 for Exclusive and to prepare and file a false 2015 Form 1040 for MEHDI MOSLEM.

     k. In or about December 2017, SAAED MOSLEM directed CC-1 to prepare and file a false 2015 Form 1040 and a false 2016 Form 1040 for SAAED MOSLEM.

     l. In or about October 2018, MEHDI MOSLEM directed CC-1 to prepare and file a false 2016 Form 1065 for Exclusive and a false 2016 Form 1040 for MEHDI MOSLEM.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Bank Fraud Conspiracy)

The Grand Jury further charges:

#### Background

11. Paragraphs 2 through 7 are repeated and realleged as if set forth fully herein.

12. From in or about 2011 through in or about 2019, MEHDI MOSLEM and SAAED MOSLEM, the defendants, fraudulently sought and obtained loans for Exclusive and customers of Exclusive from financial institutions (the "lenders"), the deposits of which

6

were insured by Federal Deposit Insurance Corporation and the National Credit Union Share Insurance Fund. Through this conduct, the defendants endeavored to boost Exclusive's business prospects, whether by directly accessing capital or by facilitating financing for customers to purchase Exclusive's vehicles.

13. The defendants provided the lenders with materially false information about, among other things, their personal finances, including, but not limited to, their assets and liabilities, and the amount of income reported in their tax returns. The defendants sought to falsely overstate their net worth by, among other things, inflating the market value of their real estate assets and by omitting tax liabilities arising from the understatement of their income on their Forms 1040 filed with the IRS.

14. In furtherance of the conspiracy and to effect the illegal object thereof, the defendants made and facilitated the following fraudulent loan applications, among others.

Commercial Mortgage Application to Hudson Valley

15. In or about April 2011, MEHDI MOSLEM and SAAED MOSLEM, the defendants, and CC-1 submitted an application for an approximately $1.5 million mortgage loan for Exclusive, with Exclusive's property in Central Valley, New York and the defendants' personal guarantees as security for the loan, to

Hudson Valley Federal Credit Union ("Hudson Valley").

16. MEHDI MOSLEM and SAAED MOSLEM, the defendants, submitted personal financial statements with the application that falsely overstated the value of their assets and understated their liabilities.

17. MEHDI MOSLEM and SAAED MOSLEM, the defendants, and CC-1 agreed to provide a false explanation to Hudson Valley regarding discrepancies between financial information submitted with the mortgage loan application and a fabricated 2009 tax return that SAAED MOSLEM had previously submitted to Hudson Valley in or about 2010, in connection with a different application.

Riverside Bank Commercial Mortgage Loan

18. From in or about June 2011 through in or about December 2011, SAAED MOSLEM and MEHDI MOSLEM, the defendants, submitted an application for an approximately $1,162,500 mortgage loan for Exclusive, with Exclusive's property in Central Valley, New York and the defendants' personal guarantees as security for the loan, to Riverside Bank ("Riverside").

19. MEHDI MOSLEM and SAAED MOSLEM, the defendants, submitted personal financial statements with the application that falsely overstated the value of their assets and understated their liabilities.

20. SAAED MOSLEM, the defendant, caused a fabricated 2009

8

Form 1040 that was not filed with the IRS to be submitted to Riverside in support of the application.

### Walden Bank Line of Credit

21. From in or about July 2012 through in or about August 2012, MEHDI MOSLEM and SAAED MOSLEM, the defendants, submitted an application for a $500,000 line of credit for Exclusive, with their personal guarantees as security, to Walden Bank. MEHDI MOSLEM and SAAED MOSLEM overstated their assets and understated their liabilities in the application.

### Salisbury Bank Loan

22. In or about February 2017, MEHDI MOSLEM and SAAED MOSLEM, the defendants, submitted an application for a $125,378.21 loan for Exclusive, with their personal guarantees as security for the loan, to Salisbury Bank ("Salisbury"). MEHDI MOSLEM submitted a personal financial statement in support of this application that overstated the value of his assets and understated his liabilities.

### Noah Bank Loan

23. In or about July 2018, SAAED MOSLEM, the defendant, provided purported 2016 tax returns for Exclusive and MEHDI MOSLEM, the defendant, to a third-party broker for transmission to potential lenders, including Noah Bank in connection with a December 2018 application for a $110,000 loan for Exclusive. In fact, these returns differed materially from the 2016 tax

returns for Exclusive and MEHDI MOSLEM that the defendants caused to be filed with the IRS.

### Mid-Hudson Valley Customer Loan

24. From in or about February 2019 through in or about March 2019, SAAED MOSLEM, the defendant, caused the submission of a car loan application for a customer of Exclusive to Mid-Hudson Valley Federal Credit Union ("Mid-Hudson Valley"). In support of the application, without the customer's knowledge or permission, SAAED MOSLEM submitted a fabricated tax return for the customer to Mid-Hudson Valley that substantially overstated the customer's income for 2017.

### **STATUTORY ALLEGATION**

25. Beginning in or about 2010, and continuing through in or about 2019, in the Southern District of New York and elsewhere, MEHDI MOSLEM and SAAED MOSLEM, the defendants, knowingly did conspire and agree with CC-1 and others to commit an offense against the United States, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

### **COUNT THREE**
### **(False Statements to a Lender)**

The Grand Jury further charges:

26. The allegations contained in paragraphs 2 through 4 of this Indictment are repeated and realleged as though fully set

forth herein.

27. In or about July 2010, SAAED MOSLEM, the defendant, fraudulently obtained a loan from Bank of America in the approximate amount of $415,000 that was secured by property in Pine Bush, New York. To obtain the loan, SAAED MOSLEM provided Bank of America with an inflated personal net worth statement and a fabricated 2009 Form 1040 that was not filed with the IRS, which fraudulently reflected $283,579 in business income relating to Exclusive.

## STATUTORY ALLEGATION

28. In or about July 2010, in the Southern District of New York and elsewhere, SAAED MOSLEM, the defendant, willfully and knowingly did make false statements and reports for the purpose of influencing the action of an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, upon an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, and any change and extension of any of the same, by renewal, deferment of action and otherwise, and the acceptance, release and substitution of security therefor, to wit, in connection with an application to Bank of America for the loan described above, SAAED MOSLEM made false statements as described above.

(Title 18, United States Code, Section 1014.)

## COUNT FOUR
### (False Statements to a Lender)

The Grand Jury further charges:

29. The allegations contained in paragraphs 2 through 7 are repeated and realleged as though fully set forth herein.

30. From in or about September 2013 through in or about December 2013, SAAED MOSLEM, the defendant, caused to be submitted to Melrose Credit Union ("Melrose") an application for Quality Homes of Hudson Valley LLC ("Quality Homes") for a loan secured by property in Florida, New York and SAAED MOSLEM's personal guarantee. To obtain the loan, SAAED MOSLEM falsely overstated his net worth by overstating the value of his assets and understating his liabilities.

### STATUTORY ALLEGATION

31. From in or about September 2013 through in or about December 2013, in the Southern District of New York and elsewhere, SAAED MOSLEM, the defendant, willfully and knowingly did make false statements and reports for the purpose of influencing the action of an insured State-chartered credit union, upon an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, and any change and extension of any of the same, by renewal, deferment of action and otherwise, and the acceptance, release and substitution of security therefor, to wit, in connection

with an application to Melrose Credit Union for the loan described above, SAAED MOSLEM, the defendant, made false statements as described above.

(Title 18, United States Code, Section 1014.)

## COUNT FIVE
### (Bank Fraud)

The Grand Jury further charges:

32. The allegations contained in paragraph 2 of this Indictment are repeated and realleged as if set forth fully herein.

33. From in or about February 2019 through in or about March 2019, in the Southern District of New York and elsewhere, SAAED MOSLEM, the defendant, and others known and unknown, willfully and knowingly did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credit, assets, securities, and other property owned by, and under the custody and control of, such financial institution by means of false and fraudulent pretenses, representations, and promises, to wit, SAAED MOSLEM caused the submission of a car loan application for a customer of Exclusive to Mid-Hudson Valley Federal Credit Union and, in connection with that application, submitted a fabricated tax return to Mid-Hudson Valley Federal

Credit Union that substantially overstated the customer's income for 2017 without the customer's knowledge or permission.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SIX
### (Concealment of Assets, False Oaths, and False Claims In Connection with a Bankruptcy Case)

The Grand Jury further charges:

### BACKGROUND

34. The allegations contained in paragraphs 2 through 7 of this Indictment are repeated and realleged as if set forth fully herein.

35. On or about January 15, 2015, SAAED MOSLEM, the defendant, initiated a personal bankruptcy proceeding under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York that was captioned *In re Saaed Moslem*, No. 15 Bk. 35062 (the "Bankruptcy Case").

36. On or about March 30, 2015, SAAED MOSLEM, the defendant, directed CC-1 to transfer SAAED MOSLEM's ownership interest in Exclusive to MEHDI MOSLEM, the defendant, effective January 1, 2014. SAAED MOSLEM told CC-1, in substance and in part, that the reason for the transfer was that SAAED MOSLEM "had to file for bankruptcy to get rid of a mortgage."

37. From in or about January 2015 through in or about July 2015, SAAED MOSLEM, the defendant, made the following false

14

statements and material omissions in the Bankruptcy Case under penalty of perjury and under oath, among others:

    a. SAAED MOSLEM falsely stated in his bankruptcy petition and at a hearing before the bankruptcy trustee pursuant to Title 11, United States Code, Section 341 (the "Section 341 Hearing") that he had made no transfers of property within the previous two years, thereby concealing his ownership interest in Exclusive in 2013 and 2014 by failing to disclose, as required:

        i. the transfer of a portion of his ownership interest in Exclusive in or about 2013.

        ii. the transfer of his remaining ownership interest effective in or about January 2014;

    b. SAAED MOSLEM concealed his ownership interests in certain real property by failing to disclose, as required, in his bankruptcy petition at the Section 341 Hearing his legal or equitable interests, in the following:

        i. a lot in Cornwall, New York associated with the address 292-294 Main Street;

        ii. a lot in Cornwall, New York associated with the address 298-300 Main Street; and

        iii. a lot in Cornwall, New York associated with the address 302 Main Street;

    c. SAAED MOSLEM falsely stated at the Section 341 Hearing that he did not own any properties other than those

15

identified in his bankruptcy petition.

    d.    SAAED MOSLEM falsely understated his then current income in his bankruptcy petition, as well as his income for 2012 and 2013;

    e.    SAAED MOSLEM concealed his ownership interest in Quality Homes by failing to disclose such interest as required, in his bankruptcy petition and at the Section 341 Hearing; and

    f.    SAAED MOSLEM failed to disclose, as required, in his bankruptcy petition his positions as president of Quality Homes, vice president of Exclusive, and partner, within the six years preceding the Bankruptcy Case, in Exclusive.

**STATUTORY ALLEGATION**

38.    From in or about January 2015 through in or about July 2015, in the Southern District of New York and elsewhere, SAAED MOSLEM, the defendant, (1) did knowingly and fraudulently conceal property belonging to the estate of a debtor from a trustee charged with the control and custody of property and, in connection with a case under Title 11, from creditors and the United States Trustee, (2) did knowingly and fraudulently make a material false declaration, certificate, verification, and statement under penalty of perjury as permitted under section 1746 of Title 28, (3) did knowingly and fraudulently make a false material statement under oath, in and in relation to a case under Title 11, and (4) did, in contemplation of a case

under Title 11, or with intent to defeat the provisions of Title 11, knowingly and fraudulently transfer and conceal his property, to wit, in connection with the Bankruptcy Case, SAAED MOSLEM made fraudulent statements under penalty of perjury, testified falsely under oath, concealed assets, and fraudulently transferred his ownership interest in Exclusive, as described above.

(Title 18, United States Code, Sections 152(1), 152(2) 152(3), 152(7) and 2.)

## COUNT SEVEN
### (Aggravated Identity Theft)

The Grand Jury further charges:

39. The allegations contained in paragraphs 2, 24, and 33 of this Indictment are repeated and realleged as if set forth fully herein.

40. In or about March 2019, in the Southern District of New York and elsewhere, SAAED MOSLEM, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, the defendant unlawfully possessed, used, and transferred the personal identification information of a customer of Exclusive, including the customer's name, address, phone number, and forged signature, as reflected in a fabricated tax return, without the customer's knowledge or

17

permission, in connection with the commission of bank fraud conspiracy, as charged in Count Two of this Indictment, and bank fraud, as charged in Count Five of this Indictment.

(Title 18, United States Code, Sections 1028A and 2.)

## FORFEITURE ALLEGATIONS

41. As a result of committing the offenses alleged in Counts Two through Six of this Indictment, MEHDI MOSLEM and SAAED MOSLEM, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code Section 982(a)(2)(A), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Asset Provision

42. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

   e. has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

   (Title 18, United States Code, Section 981;
  Title 21, United States Code, Section 853; and
   Title 28, United States Code, Section 2461.)

_____  
FOREPERSON

_____  
AUDREY STRAUSS  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

v.

MEHDI MOSLEM, et al.

Defendants.

---

**SUPERSEDING INDICTMENT**

S1 19 Cr. 547

(Title 18, United States Code, Sections 152, 371, 1014, 1028A, 1344, 1349 and 2.)

---

AUDREY STRAUSS
United States Attorney

*[signature]*
Foreperson

---