

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*300 Quarropas Street*
*White Plains, New York 10601*

August 27, 2021

**BY CM/ECF**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

    Re:   *United States* v. *Saaed Moslem*, 19 Cr. 547 (CS)

Dear Judge Seibel:

   The Government respectfully writes in opposition to defendant Saaed Moslem's most recent renewed motion for bail pending sentencing, filed on August 20, 2021. (ECF No. 111.) The defendant's continued detention is warranted for the reasons explained in the Government's July 29, 2021 letter (ECF No. 108) and in the Court's detailed rulings at the third and fourth bail hearings held on June 29, 2021 and August 2, 2021.

   The defendant's fifth attempt to fashion a bail package largely rehashes the same points that the Court previously rejected. It does not come close to meeting his burden of showing by clear and convincing evidence under Section 3143(a) that he does not pose a risk of flight. As the Court correctly observed, "[t]here is just a time when your dishonesty and cheating and chicanery catches up to you, and that time is now." Hr'g Tr. at 27:13-14 (Aug. 2, 2021). Accordingly, the Court should reject the renewed bail application.

### I. The Renewed Bail Package Does Not Satisfy the Standard for Pre-Sentence Release Under Section 3143(a)

   As the Court made clear at the fourth post-verdict bail hearing, "bail under [Section] 3143 is a matter of trust, and these defendants made some decisions over a period of many years that have eroded the basis for having any trust that they will do what they're supposed to and return." Hr'g Tr. at 27:15-18. The defendant's renewed bail motion does nothing to change this conclusion. The proposed bail package, which consists of five properties and four co-signers, is grossly deficient. Moreover, the defendant's claim that only he can unwind the Exclusive Motor Sports business that served as the focal point of his fraudulent conduct is meritless.

The Honorable Cathy Seibel         Page 2
United States District Judge

### A. The Proposed Properties and Co-Signers Are Deficient for the Same Reasons the Court Explained at the Fourth Bail Hearing

First, the proposed properties and co-signers raise the same fatal issues that the Court addressed at the last bail hearing. Although the defendant now provides documentation purporting to show the equity in the proposed properties, the Court should place little weight in such information based on the defendant's track record. The Court rightfully noted the repeated post-verdict revelations of "machinations and spreader agreements and unrecorded deals that the defendants were involved in that make the Government and the Court skeptical about the actual equity in these properties." Hr'g Tr. at 23:1-5. It is therefore difficult to accept at face value any representations regarding the equity in the properties given how such representations have proven wrong and misleading multiple times during the litany of post-verdict bail litigation.

Three of the properties yet again comprise the defendants' Smith Clove Road parcel in Central Valley. As demonstrated at trial, the defendants previously inflated the value of this parcel to lenders as part of their fraudulent conduct. Moreover, as the Government explained in its July 29, 2021 letter, one of the Smith Clove Road properties was apparently subjected to a previously undisclosed "spreader agreement" that also created an unrecorded encumbrance on the Exclusive Motor Sports dealership. Two of the Smith Clove Road properties are already heavily leveraged by the mortgages that were actually recorded. Additionally, based on the Government's review of prior title search reports on the Smith Clove Road properties, the defendants previously had no compunction with New York State attaching hundreds of thousands of dollars in tax warrants on one of the Smith Clove Road properties.[1] It therefore strains credibility for the defendant to claim these properties offer any assurances that he does not pose a flight risk.

The bail package also fails to address the Court's concerns about the moral suasion of the co-signers. Indeed, the individual the Government referred to as Co-Signer 1 in its July 29, 2021 letter (who told the FBI that the defendants were victims of entrapment) is the owner of one of the properties offered in the bail package. And one of the proposed co-signers is now Co-Signer 1's husband (instead of Co-Signer 1 herself, as originally proposed). As the Court explained, "to the extent the proposed cosigners are of the view that this was an injustice or that their loved ones are innocent or that their loved ones are entrapped, their moral suasion is correspondingly reduced." Hr'g Tr. at 23:21-24; *see also id.* at 26:13-15 ("So I'm doubtful that the cosigners appreciate what their loved ones are really up to. I'm doubtful that some of them

---

[1] It appears that the state tax warrants were satisfied through the proceeds of the Exclusive Motor Sports sale.

have moral suasion, or at least one of them has moral suasion given that she seems to have bought into the conspiracy theory that this is all some kind of setup.").

The Court should have every reason to doubt whether any of the proposed co-signers or property owners actually have moral suasion over the defendant. Indeed, the attendance of the defendant's family at trial and at the third bail hearing did little to stop his disruptive conduct, which the Court explained "suggest[s] an impulsivity and a failure to appreciate the gravity of these proceedings that I find of concern." Hr'g Tr. at 25:1-3.

Accordingly, the defendant's renewed bail package does not come close to meeting his burden under the clear and convincing standard under Section 3143(a). The Court should deny the bail application on that grounds alone.

### B. The Defendant's Claims Regarding the Exclusive Motor Sports Dealership Are Unfounded

The Court has already rejected the defendant's claim that his release is necessary to unwind and close Exclusive Motor Sports. H'rg Tr. at 25:7-14. The Court rightfully explained that the defendants are "very selective about what obligations they care about," and though the "customers whose cars are at the dealership are indirect victims," the defendants "didn't care at all about other victims of their crimes." *Id.* Indeed, although the defendant claims he "dedicated himself to Exclusive over the years" (Def. Mot. at 1), the overwhelming evidence at trial proved that he used the dealership to carry out his schemes to defraud the United States, his lenders, and the bankruptcy court in this District. Nor did the defendant care about the customer whose personal information he used without permission in a fabricated tax return he used to get a car loan. After using Exclusive Motor Sports to facilitate his fraudulent schemes for years, the notion that he must be released to "settle his affairs in an orderly manner" (Def. Mot. at 1) rings hollow and reflects, as the Court put it, a "detachment from reality." Hr'g Tr. at 25:4-6.

Furthermore, the defendant's claim that only he can close the dealership and return the ten cars is nonsense. For starters, the defendant's bail application contradicts the statements he made to the Probation Office during the presentence investigation. Specifically, the defendant told the Probation Office that the business closed in the beginning of June 2021, with defense counsel explaining that the business could not function even while the defendant was on home detention. The defendant also told the Probation Office that his duties included purchasing and selling vehicles, ordering parts, handling payroll, managing employees, and customer service.

But the defendant's renewed bail motion tells a different story both about the status of the dealership and his responsibilities. Among other things, the defendant now

claims he is the "only one available who knows how to do" mechanical work. (Def. Aug. 23, 2021 Ltr. at 3, ECF No. 113.) Even if that were the case, the cars do not need to be repaired; they simply need to be returned to their owners. That task can be done by the defendant's family, or even with the assistance of the experienced car mechanics who testified as character witnesses for the defendants. Trial Tr. 1080-97. Indeed, one of the character witnesses testified he went to the dealership to see the defendant once or twice a day, including as recently as the day before he testified. *Id.* at 1096:1-14.

Moreover, nearly all the work described in the defendant's August 23, 2021 follow-up letter (ECF No. 113) does not require any specialized knowledge. The cleanup and removal of vehicles, equipment, tools, parts, office supplies, and furniture does not need to be done by the defendant alone. Indeed, the post-occupancy agreement the defendant sent to the Court states that the front showroom portion of the dealership was required to be vacated by July 22, 2021. With that deadline passed, it is unclear why such materials would still be on the property anyway (despite the defendant's claim to the Probation Office that the business already closed in early June). Similarly, the defendant's family can easily return any licenses or paperwork related to the closure of the business with instruction by the defendant. And to the extent the defendant needs to sign a power of attorney to allow his family or friends to make any filings on his behalf, he can do so. It should not be lost on anyone that the defendant effectively removed himself as an owner of Exclusive Motor Sports as early as 2014 to prepare his fraudulent bankruptcy filing. The defendant should therefore be experienced in having others handle paperwork for the business on his behalf.

A recent example illustrates that the defendant's family is more sophisticated in this process than the defendant claims. On August 23, the FBI was contacted by an Exclusive Motor Sports customer ("Customer-1") to report allegations of fraud. Specifically, Customer-1 reported that he bought a car from Exclusive Motor Sports in 2018 along with a three-year warranty. When Customer-1's car recently broke down, he called the warranty company and learned that it was never activated and that the company had no proof of its purchase. In response, Customer-1 contacted the defendant's mother approximately three to four weeks ago, who met with Customer-1 at Exclusive Motor Sports and took copies of Customer-1's warranty paperwork. Just days later, Customer-1's warranty was activated. Because both defendants were remanded at the time, that activation was apparently done by the defendant's mother or family, which undermines his claim that only he can address the problems at the dealership that he told the Probation Office was already closed.[2]

---

[2] The FBI memorialized this interview, and the Government can provide it to counsel and Chambers on request. Customer-1 also reported that the defendant's mother told him that the defendant was going to be bailed out of prison in a week. When Customer-1 tried to call the defendant earlier this month, a woman answered the

    Finally, a review of the recently finalized presentence investigation report ("PSR") contains additional examples of the defendant's lack of candor, which further casts doubt on the reliability of the defendant's representations in his renewed bail letter. For instance, the defendant tested positive for cocaine in June 2021, despite denying any use of the drug since his early 20's. The defendant also admitted to drinking one 750 milliliter bottle of vodka daily while on home detention despite the Court's January 2020 order to refrain from any alcohol use (ECF No. 26.) The PSR also states that a commercial database query lists 31 possible properties currently or previously associated with the defendant, which suggests the presence of undisclosed assets that is further corroborated by his refusal to submit a financial affidavit, as he was required to do under 18 U.S.C. § 3664(d)(3) ("Each defendant shall prepare and file with the probation officer an affidavit fully describing the financial resources of the defendant, including a complete listing of all assets owned or controlled by the defendant as of the date on which the defendant was arrested . . .")

    The defendants were indicted on serious charges in 2019, and have had ample notice and opportunity to prepare for the possibility of imprisonment. Nothing in the defendant's renewed motion changes the basis for the Court's detention ruling. The Probation Office has calculated a Guidelines range of 111 to 132 months' imprisonment, which includes the mandatory consecutive term of 24 months' imprisonment on his conviction for aggravated identity theft. Against that backdrop, the Probation Office recommends a sentence of 111 months' imprisonment. The defendant has been "willing to lie and cheat and manipulate and finagle to take care of the obligations he decides are important and disregard[] the ones imposed by law." Hr'g Tr. at 27:5-10. The defendant cannot meet his burden under Section 3143(a) of showing by clear and convincing evidence that he is not a risk of flight, and the Court should continue its remand order entered on June 29, 2021 and reiterated on August 2, 2021.

    [Continued on next page.]

---

phone claiming to be the defendant's wife. The Government points this out because the defendant told the Probation Office that he has never been married.

## II. Conclusion

For the reasons explained above, the Government respectfully requests that the Court deny the defendant's renewed bail application.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: _____
Daniel Loss
Nicholas S. Bradley
James McMahon
Assistant United States Attorneys
(212) 637-6527 / (914) 993-1962 / -1936

cc: Counsel of Record (by CM/ECF)