UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                      ORDER

SAAED MOSLEM,                              19-CR-547-2 (CS)

                Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Saaed Moslem's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (ECF Nos. 386, 392), and the Government's opposition thereto, (ECF No. 391). Defendant was convicted of conspiracy to defraud the Internal Revenue Service, conspiracy to commit bank fraud, two counts of false statements to lenders, bank fraud, bankruptcy fraud and aggravated identity theft, and sentenced principally to 96 months' imprisonment. (ECF No. 255.) He has served almost 40 months and is housed at FCI Fort Dix which, according to the Bureau of Prisons ("BOP") website, is a low-security facility.

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the 18 U.S.C. § 3553(a) factors, reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 also permits a sentence reduction for extraordinary and compelling reasons, and additionally requires that the Defendant not be a danger to the safety of any other person or the community. *See* U.S.S.G. § 1B1.13(a), p.s. The Policy Statement, as amended, *see United*

*States v. Feliz*, No. 16-CR-809, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023),[1] identifies as extraordinary and compelling certain circumstances relating to medical condition, age, family, prison abuse, and unusually long sentences, as well as any other circumstances of similar gravity, *see* U.S.S.G. § 1B1.13(b)(1)-(6). "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." *United States v. Jacques*, No. 20-3276, 2022 WL 894695, at *1 (2d Cir. Mar. 28, 2022) (summary order).

Defendant argues that extraordinary and compelling circumstances exist here because the Government committed misconduct by drawing to the attention of the BOP a statement he made in a recorded call while detained at the Westchester County Jail, and that as a result BOP has imposed public safety factors ("PSF"s) for "serious telephone abuse" and "threat to government officials" that preclude his placement at a camp and his use of the phone or Trulincs electronic

---

[1] I agree with the court in *Feliz*, which found that the November 1, 2023 amendments to Policy Statement 1B1.13 have harmonized the Policy Statement with the First Step Act; that *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), therefore does not apply to the new version of Policy Statement 1B1.13; and that "[a]ccordingly, to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, also find that granting such relief is consistent with Policy Statement 1B1.13." 2023 WL 8275897, at *4; *see United States v. Corbett*, No. 10-CR-184, 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) ("The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated."). But the outcome here would be the same even under *Brooker* and the old version of 1B1.13. The Court will send Defendant copies of any unpublished decisions cited in this Order. Unless otherwise indicated, all case quotations omit internal citations, quotation marks, footnotes and alterations.

messaging.[2] Specifically, Defendant concedes that he was recorded saying the following regarding the undersigned:

> We're waiting for this fucking – this cunt of a judge to hopefully die in a horrible car accident. So hopefully her kids will fucking die in front of her and you can see her in a horrible flaming car accident. Yeah. And hopefully her kids' skin will melt off their face right in front of her so she can see the type of fucking pain she puts people's families through on fabricated lies of the government. She's going to burn in hell and I'm going to make sure, I'm going to make sure I'm the one that puts her there. Trust me when I tell you that, okay?.

(ECF No. 386 at 10; *see id.* at 1.) Defendant contends that I concluded that he "harbored no actual intent to cause harm." (*Id.* at 1.) That is not so. I noted on the record at the start of the *Fatico* hearing that I had been informed by the Marshals that Defendant had made statements about me that were of concern, that I remembered a portion of the statements (about his wish that my children and I would die in a car crash and I would see their faces melting off), that the Marshals had reviewed other recordings and spoken to people to whom Defendant had spoken, and that the Marshals were not concerned that Defendant intended any threats. (ECF No. 265 at 3-4.) I did not reach any conclusions myself about Defendant's intent, but merely reported the Marshals' evaluation. But even if I agreed with the Marshals that Defendant posed no actual threat, not only is BOP not bound by any such assessment, but Defendant articulates no reason why saying over the phone that you want your judge to die and are going to make sure she burns

---

[2]Defendant claims that "BOP has imposed a total and absolute prohibition on his access to telephones and the Trulincs Public Messaging System." (ECF No. 386 at 1.) The Government contends that under the applicable regulations, inmate phone privileges "can be gradually restored, based on demonstrated responsibility," that in any event the inmate gets one call per month, and that Defendant has never requested a call. (ECF No. 391 at 9 n.1.) I will assume for purposes of this motion that Defendant has been fully banned.

in hell would not constitute a threat to a government official and serious phone abuse, even if Defendant had no intent to follow through. Further, there is nothing wrong with one component of the executive branch informing another of such behavior, which is plainly relevant under BOP regulations. That Defendant's actions have consequences is hardly the fault of the Government. If Defendant is unhappy with those consequences, he has only himself to blame.

In any event, despite Defendant's claim that the phone restriction violates his First Amendment rights, the law is clear that no such violation arises from lack of phone access as long as alternative means of communication are available. *See Fullewellen v. City of N.Y.*, No. 21-CV-7219, 2023 WL 2390551, at *5 (S.D.N.Y. Mar. 7, 2023). He makes no allegation that he has been deprived of such alternative means – and he plainly can communicate with the outside world, as evidenced by his numerous submissions to this Court – and thus does not show a violation of his constitutional rights. *See Al-Haj v. Akuamoah*, No. 19-CV-6072, 2021 WL 964211, at *4 (S.D.N.Y. Mar. 15, 2021). Further, as previously explained, the proper avenue for a claim of deprivation of constitutional rights would be a petition under 28 U.S.C. § 2241, and disagreement with BOP's security classification decision does not rise to that level. (*See* ECF No. 322.) BOP has the exclusive right to determine where an inmate serves his sentence, and there is no constitutional right to a particular security classification. *See Anderson v. Williams*, No. 15-CV-1364, 2017 WL 855795, at *8 (D. Conn. Mar. 3, 2017). "Congress has given federal prison officials full discretion to determine prisoner classifications." *Pastrana v. Nalley*, No. 03-CV-302, 2007 WL 952061, at *6 (N.D.N.Y. Mar. 29, 2007).

Thus, Defendant has not shown prosecutorial misconduct or a violation of his constitutional rights. He would prefer to be in a camp rather than a low-security facility, but the

difference between the two does not begin to approach the gravity of the factors set forth in the applicable policy statement.  Nor does his (claimed) preference for phone communication.  In short, the facts to which he points do not, singly or in combination, rise to the level of extraordinary and compelling.

Even if they did, I would have to consider the § 3553(a) factors, and they weigh strongly against release not even halfway into Defendant's sentence.  Defendant committed a range of frauds on various victims over years, has multiple disciplines during his incarceration, and seems in many of his filings with the Court to maintain the same disregard for the truth that he displayed in committing his offenses.  For example, in his latest submission – apparently in an effort to blame the Chapter 7 bankruptcy trustee for the fact that the loss amount for which he was responsible included over $500,000 in fraudulently discharged debts – he accuses the trustee of committing fraud in granting the discharge Defendant sought through his false and fraudulent filings.  (ECF No. 392 at 5-6.)  Similarly, Defendant's contention that the "deplorable conditions of confinement"[3] at his low-security institution "mimic Adolf Hitler and his concentration camps in Germany," (*id.* at 2), shows either a profound "detachment from reality," as the Government puts it, (ECF No. 391 at 10), or a willingness to say anything, no matter how absurd, to get what he wants.  Neither bodes well for a law-abiding future.  The seriousness of the offenses, the need to promote respect for the law, the need to protect the public from further crimes by the Defendant, and the need to provide just punishment all militate against any sentence reduction.

---

[3]Defendant wrote "deportable conditions of confinement," (ECF No. 392 at 2), but the Court believes he meant "deplorable."

Nor would denial of the motion create unwarranted sentencing disparities between Defendant and his co-Defendant father.  First, "§ 3553(a)'s instruction to 'avoid unwarranted sentence disparities' refers to nationwide disparities; sentencing judges are not required to consider sentencing disparities between co-defendants." *United States v. Sisnero-Gil*, No. 20-4102-CR, 2022 WL 289319, at *2 (2d Cir. Feb. 1, 2022).  Second, Defendant's father was convicted of fewer counts, caused less harm, had no prior convictions and is elderly.  These factors all warrant the disparity in their respective sentences.

For the reasons stated above, the motion is denied.  The Clerk of Court is respectfully directed to send a copy of this Order to Saaed Moslem, No. 87068-054, FCI Fort Dix, Federal Correctional Institution, P.O. Box 2000, Joint Base MDL, NJ 08640, and to terminate ECF No. 386.

Dated: October 21, 2024
　　　　White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.